**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT WILLIAMS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00276-MTS |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant Robert Williams's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, Doc. [1], Motions to Dismiss for Lack of Subject Matter Jurisdiction, Docs. [22], [23], Motion to Vacate the Judgment, Doc. [34], and Motion for Return of Property, Doc. [35]. The issues are fully briefed. For the reasons that follow, the Court Williams's motions are denied. All other motions that remain pending are denied as moot.

**I.     Background**

In December 2021, Williams was charged in an information with seven counts of bank fraud in violation of 18 U.S.C. § 1344. *See United States v. Williams*, 4:21-cv-00694-MTS-1 (E.D. Mo.). Williams waived indictment and pleaded guilty to all seven counts pursuant to a written plea agreement in exchange for the government's agreement to not bring any additional charges against him related to the instant offenses. Crim. Doc. [7].

In the plea agreement, Williams admitted that he knowingly violated § 1344 and that there was a factual basis for the guilty plea. *Id.* at 2. He also confirmed that the government would be able to prove the following facts beyond a reasonable doubt if the case were to go to trial. *Id.* at 2–3. In 2020, Williams "devised and intended to devise a scheme and artifice to defraud and obtain . . . funds . . . from Midwest Regional Bank and PNC Bank," which "were financial

institutions insured by the Federal Deposit Insurance Corporation" ("FDIC"), "by means of false and fraudulent pretenses, representations, and promises." *Id.* at 4–5.  In this scheme, Williams applied for loans through the Paycheck Protection Program ("PPP") and assisted others in applying for PPP loans. *Id.* at 6.  Williams submitted eight PPP loan applications for his business entities to Midwest Regional Bank and Justine Peterson Housing and Reinvestment Corporation ("JPHRC"), which is a lender responsible for reviewing and approving loan applications that were ultimately funded by PNC Bank. *Id.* at 6–7.  In the PPP loan applications, Williams falsely represented the number of employees and average monthly payroll expenses for his and the other individuals' business entities. *Id.*  The scheme ultimately resulted in Williams fraudulently obtaining $1,227,491.87 in loan funds for himself and $1,507,000 for the other individuals. *Id.* at 8–9.  "The total loss involved in the case is over $1.5 million dollars." *Id.* at 9.  The parties agreed that:  the base offense level was 7 under U.S.S.G. § 2B1.1(a)(1), a 16-level enhancement applied under U.S.S.G. § 2B1.1(b)(1)(I) because the loss exceeded $1.5 million dollars, and a 2-level enhancement applied under U.S.S.G. § 2B1.1(b)(10)(C) because Williams used sophisticated means. *Id.* at 10.  Williams waived his right to appeal all non-jurisdictional, non-sentencing issues, and he waived his right to contest the conviction or sentence in any post-conviction proceeding under 28 U.S.C. § 2255, "except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at 12.  Williams agreed to the entry of an order of restitution in the amount of $1,227,491.87.[1] *Id.* at 14.  He waived all interest in, and agreed to the forfeiture of, the contents of seven bank accounts, two cars, and $100,000 held in escrow. *Id.* at 14–15.  He also "knowingly and intelligently waive[d] all constitutional, statutory, and equitable challenges to any forfeiture

---

[1] The plea agreement stated that the amount of restitution was $1,231,491.87, but the restitution amount identified in the presentence investigation report ("PSR") and ordered in the judgment was $1,227,491.87. *See* Crim. Doc. [7] at 14; Crim. Doc. [28] at 41; Crim. Doc. [33] at 6.

2

carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument." *Id.* at 16.  Finally, Williams acknowledged that he "voluntarily entered into both the plea agreement and the guilty plea," that the "guilty plea [wa]s made of [his] own free will," and that he "is, in fact, guilty." *Id.* at 17.

During the plea hearing, Williams confirmed under oath that he was fully satisfied with counsel's representation, that he had read the entire plea agreement with counsel, that counsel answered all of his questions about the plea agreement, that he understood and agreed with all of its terms, and that all of the facts alleged in Section 4 of the plea agreement were true.  Crim. Doc. [47] at 9–10, 13–14, 16.  The Court recited the elements of the bank fraud, and Williams acknowledged that the elements generally described what he did as to all seven counts.  *Id.* at 15–16.  After the government summarized Williams's offense conduct, including that he was responsible for fraudulently obtaining over $1.5 million in PPP loans, Williams agreed with the government's summarization and admitted that he committed bank fraud by lying on loan applications to get PPP loans.  *Id.* at 16–19.  Williams agreed to provide full restitution and forfeit all of the property listed in the plea agreement.  *Id.* at 24.  He acknowledged that his decision to enter the plea agreement was voluntary and pled guilty.  *Id.* at 25, 27.  After finding that Williams's decision to plead guilty was knowing, voluntary, and supported by an independent factual basis containing each element of the offenses, the Court accepted his guilty plea.  *Id.* at 27.  In March 2022, the Court entered a preliminary order of forfeiture declaring that the property listed in the plea agreement was forfeited.  Crim. Doc. [25].

At sentencing, Williams confirmed under oath that he had pled guilty to all seven counts of bank fraud because he was guilty of all seven offenses, and he stated that he was fully satisfied with counsel's performance.  Crim. Doc. [49] at 3–4.  After sustaining Williams's objections to

3

two enhancements that had not been included in the plea agreement, Williams confirmed that he had no further objections to the PSR.  *Id.* at 5–7.  The Court found that the total offense level was 24 and that Williams's criminal history category VI, which resulted in a guidelines range of 100 to 125 months' imprisonment.  *Id.* at 7.  After considering the 18 U.S.C. § 3553(a) factors, the Court sentenced Williams to a total of 125 months' imprisonment and 5 years of supervised release, ordered him to pay $1,227,491.87 in restitution, and ordered that Williams had forfeited all interest in the property identified in the preliminary order of forfeiture.  *Id.* at 13–15, 20–21.  The Court entered judgment in April 2022, Crim. Doc. [33], and Williams did not file a direct appeal.  The Court entered the final order of forfeiture in April 2023.  Crim. Doc. [52].

In March 2023, Williams filed a Motion to Vacate, Set Aside, or Correct Sentence under § 2255, challenging his conviction and sentence and raising 17 grounds for relief.  Doc. [1].  He alleges that counsel provided ineffective assistance by failing to challenge whether the facts established the elements of bank fraud at the plea stage and by failing to challenge certain enhancements and the restitution order at the sentencing stage.  *Id.* at 2–4.  Williams alleges that the government engaged in prosecutorial misconduct by misrepresenting and omitting certain facts in the plea agreement, and he asserts that he is actually innocent.  *Id.* at 4.  The government opposes Williams's § 2255 Motion, arguing that counsel was not required to make meritless arguments, that his challenge to the restitution order is precluded by law, and that his allegations of prosecutorial misconduct and actual innocence are baseless.  Doc. [19].

In November and December 2024, Williams filed identical Motions to Dismiss for "Lack of Subject Matter Jurisdiction, Improper Administration of Justice, and Procedural Due Process Violations and Ineffective Assistance of Counsel."  Docs. [22], [23].  In the Motions to Dismiss, Williams asks the Court to dismiss this case for lack of subject matter jurisdiction, declare that the

4

government's seizure of his forfeited property was unlawful, and order the government to return the property he forfeited in his criminal case.  Doc. [23] at 8.  He also reiterates the prosecutorial-misconduct arguments in his § 2255 Motion and requests to be released from custody.  *Id.* at 5–8.  The government opposes Williams's Motions to Dismiss, noting that his challenges to the forfeiture order are not cognizable in this § 2255 proceeding, untimely, barred by the plea agreement and his admissions at the plea hearing, and meritless.  Doc. [28].

In January 2025, Williams filed a petition for writ of mandamus in the Eighth Circuit.  Doc. [26].  The Eighth Circuit denied the petition on May 13, 2025, Doc. [32].

On May 16, 2025, Williams filed in this Court a "Motion to Vacate the Judgment and Request for Court to Adopt Proposed Order of Vacatur" pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Criminal Procedure 41(g), asking this Court to vacate the judgment entered in this case and declare that the government's seizure of his forfeited property was unlawful.  Doc. [34].  He subsequently filed a Motion for Return of Property under Rule 41(g), reiterating his contention that the government seized his forfeited property unlawfully.  Doc. [35].

**II.     Legal Standard**

Section 2255 of Title 28 provides a "postconviction remedy for federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 469 (2023).  Section 2255(a) states the following:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A prisoner is entitled to an evidentiary hearing on a § 2255 motion unless the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief.  *Engelen v.*

5

*United States*, 68 F.3d 238, 240 (8th Cir. 1995). The Eighth Circuit has explained that a § 2255 motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.*

**III.  Discussion**

    **A.  Williams is not entitled to relief under § 2255.**

        **1.  Counsel did not provide ineffective assistance at the plea stage by failing to challenge the lack of a factual basis to support the guilty plea.**

In Grounds 4, 9, and 11–14, Williams argues that counsel provided ineffective assistance at the plea stage by failing to challenge the lack of a factual basis to support the guilty plea. Williams specifically asserts that: (1) there was not a sufficient factual basis for the counts related to the loan applications he submitted to JPHRC because JPHRC is not a financial institution insured by the FDIC; and (2) the government failed to prove that he engaged in a scheme to defraud and had an intent to defraud Midwest Regional Bank and PNC Bank. The government contends that Williams's arguments are barred by the record because he admitted that there was a factual basis for his guilty plea in the plea agreement and his plea colloquy.

Claims of ineffective assistance of counsel claims require a movant to show "both that his attorney's performance 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). To show that counsel's performance was deficient, a movant must show "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment [to the United States Constitution]." *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005) (alteration in

6

original) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice in the context of a guilty plea, a movant "must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez*, 929 F.3d at 1044–45 (citation modified).

Because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez*, 929 F.3d at 1045. Instead, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted); *see also United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003) ("We have held that facts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court, are sufficient to find a factual basis for a guilty plea." (citation modified)).

When a defendant's ineffective-assistance claim challenges the sufficiency of the factual basis of his guilty plea, courts examine whether "the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009). Thus, a defendant will not

be entitled to relief under § 2255 when "the government's uncontested evidence and [the defendant]'s own colloquy with the [district court] established an adequate factual basis for [the defendant]'s guilty plea. . . ." *Meza-Lopez*, 929 F.3d at 1045 (citing *Brown*, 331 F.3d at 595).

To establish a bank fraud offense under 18 U.S.C. § 1344(2), the government must prove that a defendant (1) knowingly executed a scheme or artifice; (2) intended to obtain any of the moneys or other property owned by, or under the custody or control of, a financial institution; (3) by means of false or fraudulent pretenses, representations, or promises. *Loughrin v. United States*, 573 U.S. 351, 355–56 (2014). In *Loughrin*, the Supreme Court explained that § "1344(2)'s 'by means of' language is satisfied when, as here, the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control. That occurs, most clearly, when a defendant makes a misrepresentation to the bank itself. . . ." *Id.* at 363. "But no less is the [false statement] the 'means' of obtaining bank funds when a defendant like Loughrin offers it . . . to a third party like [a department store]." *Id.*

Williams's allegations that counsel provided ineffective assistance at the plea stage by failing to challenge the lack of a factual basis to support the guilty plea are contradicted by the record. During his plea colloquy, Williams stated under oath that he read the plea agreement, discussed it with his attorney, and understood its terms. Crim. Doc. [47] at 9–10, 13–14. He admitted that all of the facts in Section 4 of the plea agreement—including that he devised and intended to devise a scheme and artifice to defraud and obtain funds from financial institutions insured by the FDIC by means of false and fraudulent pretenses, representations, and promises—were true, and he confirmed that he was guilty of all seven offenses. Crim. Doc. [7] at 3–9; Crim. Doc. [47] at 16; Crim. Doc. [49] at 3. At sentencing, Williams confirmed under oath that he pled guilty because he was guilty of all seven offenses. Based on the plea agreement, the

8

government's summarization of the plea agreement, the stipulated facts, and Williams's sworn testimony during the plea colloquy, the Court finds that there was a sufficient factual basis for Williams's guilty plea. *See Meza-Lopez*, 929 F.3d at 1045; *Brown*, 331 F.3d at 595.

Williams's assertion that there was not a factual basis for the claims related to JPHRC because JPHRC is not a financial institution insured by the FDIC is foreclosed by *Loughrin*. It is irrelevant that Williams submitted some of his fraudulent loan applications to JPHRC because his false statements to JPHRC induced PNC Bank to part with its funds, and he admitted that PNC Bank was a financial institution insured by FDIC. *See Loughrin*, 573 U.S. at 363 ("[N]o less is the [false statement] the 'means' of obtaining bank funds when a defendant like [Williams] offers it . . . to a third party like [JPHRC]."); Crim. Doc. [7] at 3–4. Counsel was not ineffective for declining to raise meritless arguments. *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance."). Thus, Grounds 4, 9, and 11–14 are denied.

### 2. Counsel did not provide ineffective assistance at sentencing by not objecting to the amount-of-loss and sophisticated-means enhancements.

In Grounds 1–3, 5, 8, and 10, Williams contends that counsel provided ineffective assistance at sentencing by failing to object to the enhancements for a loss exceeding $1.5 million and for using sophisticated means. He asserts that the amount-of-loss enhancement was erroneously applied because there were no victims or losses associated with his offenses. Williams argues that his offense conduct was not sufficiently complex to warrant the application of the sophisticated-means enhancement.

Here, Williams cannot show that counsel acted unreasonably by not objecting to the amount-of-loss and sophisticated-means enhancements because he stipulated to the facts supporting both of the enhancements and agreed that the enhancements applied in the plea

9

agreement.  *See United States v. Krzyzaniak*, 702 F.3d 1082, 1084 (8th Cir. 2013) ("A defendant may not challenge an application of the Guidelines to which he agreed in a plea agreement (unless he proves the agreement invalid or succeeds in withdrawing from it))."); *Schlichting v. United States*, 355 F. App'x 84, 84–85 (8th Cir. 2009) (unpublished per curiam) (concluding that defendant could not "show that sentencing counsel acted unreasonably in abiding by the plea agreement's terms or that he was prejudiced by counsel's failure to challenge the agreed-upon enhancements"); Crim. Doc. [7] at 3–10.  Therefore, Grounds 1–3, 5, 8, and 10 are denied.

### 3. Williams may not challenge the restitution order in this § 2255 proceeding.

In Grounds 6, 7, and 10, Williams argues that counsel was ineffective for failing to challenge the restitution order.  Although Williams has raised this issue in the context of an ineffective-assistance-of-counsel claim, his challenge to the restitution order is foreclosed by Eighth Circuit precedent holding that "that a federal prisoner cannot challenge the restitution portion of his sentence under section 2255, because the statute affords relief only to prisoners claiming a right to be released from custody."  *Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013) (per curiam) (citing *United States v. Bernard*, 351 F.3d 360 (8th Cir. 2003)).  As a result, Grounds 6 and 7 must be denied.

### 4. Williams has not shown that the government engaged in prosecutorial misconduct.

In Grounds 15 and 16, Williams contends that the government engaged in prosecutorial misconduct by misrepresenting and omitting facts in the plea agreement and by inducing him to enter the agreement despite knowing that it could not prove the facts supporting the convictions if

10

the case had proceeded to trial.[2] His argument largely rests on his assertion that there was not a factual basis for the guilty plea.

As explained above, Williams's contention that his guilty plea lacked a sufficient factual basis is meritless and contradicted by the record, which shows that he entered into the plea agreement knowingly and voluntarily. Williams stipulated that all of the factual allegations in the plea agreement were true and could have been proven beyond a reasonable doubt at trial, and he confirmed under oath that he was guilty of all seven offenses at sentencing and the plea hearing. Crim. Doc. [7] at 3–9; Crim. Doc. [47] at 9–10, 13–14, 16; Crim. Doc. [49] at 3–4. Williams's "representations during the plea-taking carry a strong presumption of verity," and his conclusory assertions that the government could not have proven that he was guilty at trial do not overcome that presumption. *See Adams*, 869 F.3d at 635. Thus, Grounds 15 and 16 are denied.

### 5. Williams has not demonstrated that he is actually innocent.

In Ground 17, Williams contends that he is actually innocent due to counsel's ineffective assistance. He asserts that he was prejudiced by counsel's allegedly deficient performance and that allowing his conviction and sentence to stand would result in a miscarriage of justice.

To establish actual innocence, Williams must show that "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). "'[A]ctual innocence' means factual innocence not mere legal insufficiency." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Actual innocence claims require a movant to "support his allegations of constitutional error with

---

[2] In ground 16, Williams asserts, without argument, that the government committed prosecutorial misconduct by failing to provide *Brady* material to the defense, but he does not identify any evidence that the government withheld. While Williams is entitled to a liberal construction of his § 2255 motion, his *Brady* claim "lack[s] sufficient specificity under even the most liberal pleading requirements." *See Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001) (alteration in original) (quoting *Cooper v. Schriro*, 189 F.3d 781, 785 (8th Cir. 1999))).

11

new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (quoting *Schlup*, 513 U.S. at 324). "This is a strict standard; generally, a [movant] cannot show actual innocence where the evidence is sufficient to support a . . . conviction." *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *McNeal v. United States*, 249 F.3d 747, 749–50 (8th Cir. 2001)). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Weeks*, 119 F.3d at 1351 (quoting *Schlup*, 513 U.S. at 324).

Here, Williams fails to point to any new or reliable evidence in support of his claim that he is actually innocent, and the record supports his convictions. Williams admitted that he knowingly violated § 1344, that there was a factual basis for his guilty plea, and that he was, in fact, guilty in the plea agreement, Crim. Doc. [7] at 2–3, 17, and he confirmed under oath that he was guilty of all seven offenses at the plea hearing and at sentencing, Crim. Doc. [47] at 16–19, 27; Crim. Doc. [49] at 3. Accordingly, Williams's § 2255 Motion is denied as to all 17 grounds.

**B.  Williams may not challenge the criminal forfeiture in this § 2255 action.**

In his Motions to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Vacate Judgment, and Motion for Return of Property, Williams primarily argues that his forfeited property should be returned because the government unlawfully seized it. He also repeats his arguments that the government engaged in prosecutorial misconduct, but those arguments fail for the reasons stated above.

Williams's challenge to the criminal forfeiture fails as well. Like his challenge to the restitution order, Williams's challenge to the forfeiture order is not cognizable in this § 2255 proceeding "because the statute affords relief only to prisoners claiming a right to be released from

12

custody." *See Shephard*, 735 F.3d at 798. Additionally, Williams lacks standing to challenge the forfeiture in any post-conviction proceeding because he no longer has an interest in the property. *See United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) ("A defendant has standing to challenge a preliminary order of forfeiture because that order causes his injury," but he lacks standing to challenge a final order of forfeiture because that order "is entered after the defendant has already lost ownership of the property and decides only third parties' rights in the property." (citation modified)). Any attempt to challenge the forfeiture should have been brought on direct appeal, and Williams declined to do so. *See United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019) (stating that a "defendant may appeal the preliminary forfeiture order" but "cannot appeal the final forfeiture order because it has no bearing on the defendant's rights" (citation modified)); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) (explaining that "a criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all" (citation modified)). Thus, Williams's Motions to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Vacate the Judgment, and Motion for Return of Property are denied.

**IV.   Conclusion**

For the foregoing reasons, the Court concludes that Williams's § 2255 Motion, Motions to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Vacate the Judgment, and Motion for Return of Property must be denied in all respects. Because the Court finds that the § 2255 Motion and the record conclusively show that Williams is not entitled to relief, no evidentiary hearing will be necessary. *See Engelen*, 68 F.3d at 240. Further, no certificate of appealability shall issue because the Court finds that Williams has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Accordingly,

**IT IS HEREBY ORDERED** that Williams's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that Williams's Motions to Dismiss for Lack of Subject Matter Jurisdiction, Docs. [22], [23], Motion to Vacate the Judgment, Doc. [34], and Motion for Return of Property, Doc. [35], are **DENIED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue.

A separate Order of Dismissal will accompany this Memorandum and Order.

Dated this 6th day of August 2025.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE